# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

---

DALE WILLIAM JOHNSON,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Civil No. 11-1268 (JRT/SER)

**ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

---

> John H. Burns, ATTORNEY AT LAW, 317 Northwest Seventh Street #2, Willmar, Minnesota 56201, for plaintiff.
>
> David W. Fuller, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415, for defendant.

The Commissioner of Social Security denied plaintiff Dale William Johnson's application for social security disability insurance ("SSDI") and supplemental security income ("SSI") in 2008. Before the Court are Johnson's objections to a Report and Recommendation ("R&R") of United States Magistrate Judge Steven E. Rau, which recommended granting the Commissioner's motion for summary judgment and affirming the Commissioner's denial of benefits. (July 11, 2012, Docket No. 21.) The Court has carefully considered Johnson's submission and reviewed *de novo* those portions of the R&R to which he objects. *See* 28 U.S.C. § 636(b)(1)(C); D. Minn. L.R. 72.2. Because the Court finds that substantial evidence on the record as a whole supports the ALJ's decision, the Court will overrule Johnson's objections and adopt the R&R.

# BACKGROUND

## I.    STATUTORY AND REGULATORY FRAMEWORK

To receive Social Security Disability benefits, an applicant must be "disabled." An individual is "disabled" under the Social Security Act ("SSA") if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Pursuant to the SSA, the Social Security Administration has set forth a five-step sequential framework for determining whether an individual is "disabled."  *See* 20 C.F.R. § 416.920(a)-(f); *see also Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

> During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work. If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.

*Eichelberger*, 390 F.3d at 590-91 (citations omitted).

## II.    PROCEDURAL HISTORY

Having worked as a carpenter and contractor for many years, Johnson applied for social security disability insurance and supplemental security income in 2007, alleging a disability onset date of July 23, 2007.  (Admin. R. at 108, 112-28, 134, July 22, 2011,

Docket No. 9.) Johnson claimed disability based on more than twenty alleged impairments, including type II diabetes mellitus, morbid obesity, coronary artery disease, and congestive heart failure. The commissioner denied Johnson's applications on January 9, 2008, and again upon reconsideration five months later. (*Id.* at 66-77, 80-87.) Following Johnson's request for review, the Administrative Law Judge ("the ALJ") heard the matter. (*Id.* at 7-9, 24-29, 30-39, 41-65, 95, 96-99, 104, 106.) The ALJ issued an unfavorable decision, and the Appeals Council denied Johnson's request for a review of his decision. (*Id.* at 1-6, 10-12, 13-19.) Denial of review rendered final the ALJ's decision, *see Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005), and Johnson sought judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Following cross-motions for summary judgment, the Magistrate Judge recommended granting the Commissioner's motion and denying Johnson's motion – that is, denying Johnson benefits. (R&R at 51-52.)

## III. JOHNSON'S TESTIMONY AND MEDICAL HISTORY; TESTIMONY OF VOCATIONAL EXPERT

The R&R exhaustively reviews both Johnson's testimony and the voluminous medical evidence in this case. (*See* R&R at 4-23.) The Court will only recite those portions of the record necessary to address Johnson's objections.

### A. 2008 Medical Opinions of State Agency Physicians

Two state agency medical consultants evaluated Johnson. Dr. Gregory H. Salmi reviewed Johnson's medical records and assessed his functioning on January 24, 2008.

(Admin. R. at 411-13, 414-21.)  Dr. Salmi completed a Physical Residual Functional Capacity ("RFC") Assessment and found that Johnson was capable of medium work with certain additional limitations.  (*Id.* at 414-21.)  On June 20, 2008, Dr. Aaron Mark reviewed Johnson's file and Dr. Salmi's assessment on reconsideration.  (*Id.* at 443-45.)  Dr. Mark considered Johnson's allegations of diabetes, heart disease, shoulder problems, and lung disease, among others.  (*Id.* at 443.)  Noting that Johnson's file contained updated information on reconsideration, Dr. Mark nonetheless concluded that there was "[n]o indication of a significant change in condition which would alter [the] initial assessment."  (*Id.* at 444.)  Dr. Mark affirmed Dr. Salmi's assessment as written and implicitly agreed with the medium work RFC Dr. Salmi had assigned to Johnson.  (*See id.*)

### B.    Certain Medical Evidence Accruing After June 2008

On September 24, 2009, cardiologist Dr. Jamie Pelzel examined Johnson, who "present[ed] with progressive exertional dyspnea [and] . . . an abnormal stress test with significant inferior wall ischemia in the setting of an area of prior infarction."  (*Id.* at 657-59.)  Dr. Pelzel explained to Johnson that "his symptoms are likely multifactorial and related to underlying lung disease, his morbid obesity, deconditioning, and probable obstructive coronary artery disease."  (*Id.* at 568.)

A September 14, 2009 pulmonary function report documents a "mild restrictive ventilatory defect."  (*Id.* at 570.)  A September 17, 2009 myocardial perfusion scan was consistent with "possible nontransumral inferior wall myocardial infarction with

significant peri-infarct ischemia." (*Id.* at 558.)  An October 5, 2009 coronary angiogram showed high-grade stenosis and seemingly chronic occlusions of Johnson's arteries; Dr. Pelzel listed "congestive heart failure" as a discharge diagnosis following the angiogram.  (*See id.* at 560.)

Treating physician Dr. Robert Kaiser opined in December 2009 that Johnson would be "unable to perform the physically demanding duties of a full time carpenter." (*Id.* at 576.)  Dr. Kaiser concluded, however, that the causes of Johnson's inability to perform the tasks of a carpenter are "multifactorial and [it is] hard to be real specific on actual limitations."  (*Id.*)

### C.     Testimony of Vocational Expert

Wayne Onken testified as a vocational expert ("VE") at the administrative hearing. (*Id.* at 61-64.)  The ALJ posed a series of hypotheticals to Onken.  First, the ALJ asked Onken to consider the working ability of a hypothetical man between fifty-eight and sixty-one years old who was limited to medium work activities in light of the following impairments: (1) history of coronary artery disease, (2) post bypass graphing and partial lung resection status, (3) diagnosis of diabetes mellitus, (4) treatment for degenerative joint disease of the shoulders and left hip, (5) diagnosis of morbid obesity, (6) hyperlipidemia, (7) hypertension, (8) history of asthma, and (9) sleep apnea.  (*Id.* at

61-62.) Onken testified that this hypothetical individual could perform Johnson's past work as a contractor, but not as a carpenter.[1] (*See id.* at 62-63.)

The ALJ also posed a second hypothetical with the same conditions but involving a man limited to light work. (*Id.* at 63.) Onken stated that a man with a light work limitation would be unable to perform the carpenter job but would be able to perform the contractor job. (*Id.*) A final hypothetical involved a man limited to sedentary work. (*Id.*) Onken opined that none of this man's past work would transfer to jobs at the sedentary level and that the individual would be unable to perform past work of either a carpenter or contractor. (*Id.* at 63-64.)

### D.    ALJ's Decision

Employing the Social Security Administration's five-step sequential evaluation, the ALJ found that Johnson was not disabled. (*Id.* at 13-19.) Specifically, the ALJ considered: (1) whether Johnson was engaged in substantial gainful activity (no), (2) whether Johnson had severe impairments (yes), (3) whether Johnson's impairments met or equaled impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (no),

---

[1] Under Step Five of the disability analysis, the ALJ is permitted to consider "'reliable job information' available from various publications" in determining the claimant's ability to do other work "that exists in the national economy." S.S.R. 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000) (citing 20 C.F.R. §§ 404.1566(d) and 416.966(d)). The Dictionary of Occupational Titles ("DOT"), which provides "information about jobs (classified by their exertional and skill requirements) that exist in the national economy," 20 C.F.R. § 416.969, is one such publication.

Onken testified that both the carpenter and contractor positions would fit into the medium work hypothetical according to the descriptions of those positions provided in the DOT, but not as Johnson performed them. (Admin. R. at 62-63.)

(4) whether Johnson was capable of returning to past work (yes), (5) whether Johnson could do other work existing in significant numbers in the regional or national economy (yes). (*See id.*); *see also* 20 C.F.R. § 416.920(a)-(f) (setting forth the five-step sequential evaluation process).

At the first step, the ALJ found that Johnson had not engaged in substantial gainful activity since July 23, 2007. (*Id.* at 15.) At the second step, the ALJ determined that Johnson had "severe" impairments. *See* 20 C.F.R. § 416.920(c) ("You must have a severe impairment. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.") The ALJ found that Johnson had nine severe impairments: (1) history of partial lung resection, (2) type II diabetes mellitus, (3) tendinopathy of the right shoulder, (4) hyperlipidemia, (5) morbid obesity, (6) hypertension, (7) coronary artery disease, (8) degenerative joint disease of the hip, and (9) lower extremity edema.[2] (*Id.* at 16.)

At the third step, the ALJ found that Johnson did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525-1526, 416.920(d), 416.925-926). Considering all of Johnson's impairments together – including Johnson's obesity – the ALJ found that none of the alleged musculoskeletal, respiratory, or

---

[2] The ALJ found that the following conditions did not even minimally limit Johnson's ability to function, and thus did not amount to severe impairments: (1) vertigo, (2) sleep apnea, (3) bilateral degenerative joint disease of the shoulders, (4) leg rash, (5) bilateral knee pain, (6) situational anxiety, (7) depression, (8) asthma. (*Id.* at 16.)

cardiovascular impairments met or equaled any Listings in Sections 1.00Q, 3.00I, and 4.00F. (Admin. R. at 16.)

At the fourth step, the ALJ found that Johnson had the residual functional capacity to perform light work, as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with certain additional restrictions. To reach this conclusion, the ALJ considered both Johnson's subjective complaints and the objective medical evidence. (*Id.* at 17-18.) In assessing the objective medical evidence, the ALJ gave significant weight to the state agency medical consultants' opinions on the ground that their medium RFC assessments were "consistent with the evidence as a whole." (*Id.* at 17.) The ALJ also gave great weight to the opinions of Johnson's treating physicians Drs. Sampson and Kaiser, which dated from November 2007 and December 2009, respectively.[3] (*Id.*) The ALJ relied on these opinions and records in concluding that Johnson was able to perform light work – a reduction from the medium work RFC assessment that the state agency physicians provided in January and June 2008. (*Id.* at 414-21, 444.)

The ALJ also assessed Johnson's credibility. As to Johnson's subjective complaints, the ALJ found that his characterization of the persistence, intensity, and effects of the symptoms were not credible to the extent inconsistent with a light residual functional capacity assessment. (*Id.* at 18.) The ALJ also found that Johnson was "fairly active" and that his activity level, including performing prescribed exercise and therapy,

---

[3] Dr. Sampson examined Johnson following a shoulder manipulation and found that Johnson was improving, but still suffered from some limitation of movement in his arm. (*Id.* at 431.)

caring for pets, and shopping, was inconsistent with his allegation of disability.  (*Id.* at 17-18.)   Considering Johnson's work history, the ALJ noted evidence suggesting that Johnson remained employed after the alleged disability onset date, undermining Johnson's statements that he is unable to work.  (*Id.* at 18.)  The ALJ further observed that gaps in Johnson's earning history suggested that he "has stayed out of the work force in the past for reasons unrelated to his impairments."  (*Id.*; *see also id.* at 129-31 (showing no earnings for 1987, 1989, and 2006).)  The ALJ ultimately concluded that the medical evidence did not support greater RFC reductions and was inconsistent with a finding of disability, and that Johnson's activities did not suggest that further RFC considerations were necessary.  (*Id.*)

At step five, the ALJ relied on the VE's testimony and report in stating that Johnson is "capable of performing past relevant work as a carpenter and contractor." (*Id.*)  In making this determination the ALJ erroneously stated that the VE testified that an individual in Johnson's position "would be able to perform [Johnson's] past work as a contractor and as a carpenter."  (*Id.* at 16.)  In fact, as noted above, the VE testified that someone in Johnson's position could perform the contracting work, but not the carpenter work.  (*Id.* at 62-63.)  The ALJ determined that such work was consistent with Johnson's light work RFC.  (*Id.*)  The ALJ thus concluded that Johnson was not disabled from July 23, 2007 (alleged onset of disability) to February 22, 2010 (date of ALJ's decision). (*Id.* at 19.)

### E.    Report and Recommendation

On summary judgment, the Magistrate Judge considered whether the ALJ erred in: (1) finding that eight of Johnson's impairments were not severe, (2) failing to assess the severity of Johnson's alleged impairments, (3) failing to adequately develop the record, (4) misstating the VE's testimony, or (5) discounting Johnson's credibility and ignoring his testimony about his ability to perform past relevant work.  (R&R at 30.)  The Magistrate Judge considered each of Johnson's arguments, found the ALJ's decision to be supported by substantial evidence on the record as a whole, and recommended granting the Commissioner's motion for summary judgment.  (*See generally id.*)

Specifically, the Magistrate Judge first found that the ALJ was correct to conclude at Step Two of the analysis that eight of Johnson's alleged impairments were not severe. The record provided sufficient evidence that these impairments caused minimal limitation on Johnson's ability to perform basic work.  (*Id.* at 31-35.)  Second, the Magistrate Judge found that the ALJ's failure to consider certain other alleged impairments was not improper – and in any event was harmless.  (*Id.* at 35-42.)  Third, the Magistrate Judge found that the ALJ did not fail to adequately develop the record with respect to the RFC assessments from the state agency physicians and the certain other medical records.  (*See id.* at 42-48.)  Fourth, the Magistrate Judge found that the ALJ's admitted misstatement of the VE's testimony was harmless error because even correct statement of the testimony would not have altered his decision.  (*See id.* at 48.)  Fifth, the Magistrate Judge found that substantial evidence supported the ALJ's credibility determination, and

that the ALJ did not err in considering Johnson's prior work as a contractor as past relevant work.  (*Id.* at 49-51.)

## ANALYSIS

## I.     SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party demonstrates that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.     STANDARD OF REVIEW UNDER SOCIAL SECURITY ACT

The Court reviews the Commissioner's final decision "only to ensure that it is supported by substantial evidence in the record as a whole."  *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003) (citation and internal quotation marks omitted)).  Such review requires the Court to "consider evidence that detracts from the Commissioner's decision as well as evidence that supports it."  *Burnside v. Apfel*, 223 F.3d 840, 843 (8th Cir. 2000).  "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."  *Beckley v. Apfel*, 152

F.3d 1056, 1059 (8th Cir. 1998). "If, after reviewing the record, the Court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the commissioner's decision." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

## III.  JOHNSON'S OBJECTIONS

The Court understands Johnson to raise four objections: (1) the ALJ failed even to consider – not merely erred in assessing the severity of – several serious impairments, (2) the ALJ's misstatement of the VE's testimony was not harmless error but rather dispositive of the no-disability finding, (3) substantial evidence does not support the ALJ's credibility assessment, and (4) the ALJ failed adequately to develop the record with respect to the state medical opinions. The Court considers each objection in turn.

### A.      Impairments the ALJ Allegedly Did Not Consider

This objection relates to the alleged impairments of (1) congestive heart failure, (2) stenosis of the coronary arteries, (3) heart wall ischemia, (4) progressive exertional dyspnea, and (5) restrictive ventilatory defect. Johnson objects to the ALJ's failure even to mention congestive heart failure, stenosis of the coronary arteries, and heart wall ischemia, and to the Magistrate Judge's finding that these are "not distinct impairments" but rather "either causes or consequences of Johnson's coronary artery disease," which the ALJ expressly considered and concluded to be severe. (R&R at 36-37.) Citing to the International Statistical Classification of Diseases and Related Health Problems (commonly known as the ICD), Johnson in effect argues that because the conditions

constitute separate diagnoses for medical coding purposes, the ALJ's failure to reference them as distinct "impairments" constitutes reversible error. Johnson mounts substantially the same objection with respect to progressive exertional dyspnea[4] and restrictive ventilatory defect.[5]

Johnson's objection is not well-taken. "A 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). 20 C.F.R. pt. 404, subpt. P, App. 1 (pt. A) sets forth descriptions of various physical and mental illnesses and abnormalities, generally categorized by the body system they affect. *Sullivan v. Zebley*, 493 U.S. 521, 529-32 (1990). The code defines each impairment in terms of specific medical symptoms or laboratory test results, and "for a claimant to show that his impairment matches a listing, it must meet **all** of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530 (citations omitted). The ALJ is charged with assessing the medical evidence to determine whether any of the claimant's impairments meet or medically equal one of the listed impairments. Johnson offers no authority for the theory that the ICD is germane to this process, and the Court

---

[4] The Magistrate Judge found this condition to be "a symptom of his impairments, not a medically determinable impairment." (R&R at 37.)

[5] The Magistrate Judge observed that the cause of Johnson's restrictive ventilatory defect was unclear from the record, but found the ALJ's failure expressly to mention it in the decision unproblematic because the ALJ explicitly considered both potential causes of the condition. (R&R at 38.)

has uncovered none. Rather, the inquiry is whether the claimant suffers from a listed impairment or a disorder that is the medical equivalent of a listed impairment. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

The salient point in this case is that the ALJ considered Johnson's coronary artery disease to be a severe impairment at Step 2 of the disability analysis. (Admin. R. at 16.) Coronary artery disease is caused by a process called atherosclerosis, in which the buildup of fatty deposits progressively restricts the flow of blood to the heart.[6] As the Magistrate Judge explained, congestive heart failure, stenosis of the coronary arteries, and heart wall ischemia are all related to this process of atherosclerosis. (*See* R&R at 36-37.) The mere fact that congestive heart failure, stenosis of the coronary arteries, and heart wall ischemia are distinct diagnoses for medical coding purposes does not mean that the ALJ must list each condition separately in the disability analysis. Indeed, in assessing the medical evidence an ALJ "is not required to discuss every piece of evidence submitted," and the "failure to cite specific evidence does not indicate that such evidence was not considered." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). Johnson's objections with respect to these conditions are overruled because the Court concludes that the ALJ considered the effect of Johnson's heart conditions on his ability to work.

The same is true of Johnson's arguments with respect to progressive exertional dyspnea and restrictive ventilatory defect. Progressive exertional dyspnea, for example,

---

[6] Heart Failure, Mayo Clinic (Dec. 23, 2011), http://www.mayoclinic.com/health/heart-failure/DS00061/DSECTION=causes.

means that Johnson experiences shortness of breath after physical exertion.[7]  *See*
Stedman's Med. Dictionary at 601 (28th ed. 2006.)   Shortness of breath is frequently
considered to be symptomatic of an underlying impairment.  *See, e.g.*, *Bissen v. Astrue*,
752 F. Supp. 2d 1051, 1058 (S.D. Iowa 2010); *Polaski v. Heckler*, 606 F. Supp. 549, 550
(D. Minn. 1985).   The ALJ considered, as both severe and non-severe impairments, a
number of conditions impacting Johnson's breathing, including his coronary artery
disease, morbid obesity, history of partial lung resection, and asthma.  (Admin. R. at 16.)
Accordingly, the Court finds that the ALJ properly considered any effect of Johnson's
dyspnea on his ability to complete basic work activities.  *See Black*, 143 F.3d at 386
(failure to cite specific evidence does not show that the ALJ failed to consider it).   In
short, substantial evidence on the record as a whole supports the ALJ's conclusions
regarding Johnson's impairments at Step 2, and the ALJ's failure to specifically reference
the above conditions does not constitute reversible error.

### B.     The ALJ's Misstatement of the VE's testimony

Johnson next argues that the ALJ's misstatement of the VE's testimony was not
harmless error but rather determinative of the no-disability finding.  It is not disputed that
the ALJ misstated the VE's testimony: the VE testified at the hearing that an individual

---

[7] Because the extent of Johnson's objection with respect to his "restrictive ventilatory
defect" is that the condition is individually coded in the ICD, the Court will not separately
address it.  The same analysis applies.  As the Magistrate Judge articulates, while the ALJ did not
specifically reference "restrictive ventilatory defect," the ALJ did consider several impairments
that may have caused it.  (R&R at 38.)  Johnson does not object to this analysis, and the Court
adopts it.

with Johnson' age, education, past work experience, severe impairments, and a light work RFC **could not** perform Johnson's past work as a carpenter but **could** perform Johnson's past work as a contractor. (Admin. R. at 63.) In the decision, however, the ALJ stated that the VE testified that such an individual "would be able to perform [Johnson's] past work as a contractor and as a carpenter." (*Id.* at 16.) The Magistrate Judge found this misstatement to be harmless. (R&R at 48.)

The Court finds that it is far from "clear," as Johnson claims, that the ALJ's error was "determinative of the ultimate decision finding him not disabled." (Johnson's Objections at 7, July 25, 2012, Docket No. 23.) While the ALJ erroneously stated that the VE testified an individual in Johnson's position could perform his past work as both a contractor and a carpenter, the VE **did** testify that an individual in Johnson's position would be able to perform light contractor work according to the DOT description. (*Id.* at 63.) Johnson objects that he was "never a contractor apart from the contractor-type work necessary to support his self-employment as a carpenter," (*id.* at 9), but the Court finds that distinction to be irrelevant because Johnson's experience as a contractor constitutes past relevant work, and it can thus be properly considered in the disability analysis.[8] In

---

[8] Johnson worked for one to two hours at night as a contractor and operated as the sole contractor for his self-employed business for over thirty years. (Admin. R. at 56-57.) This work is past relevant work because it was done within the last fifteen years, lasted long enough for Johnson to learn to do it, and constituted substantial gainful activity. *See* 20 C.F.R. § 404.1565(a); *Reeder v. Apfel*, 214 F.3d 984, 989 (8th Cir. 2000). Johnson also appears to object to the Magistrate Judge's conclusion that this contractor work was past relevant work because it was not substantial. That objection is overruled. Substantial work includes part-time work, *see Reeder*, 214 F.3d at 989, and Johnson's contracting experience is analogous to part-time work.

short, the ALJ correctly relied on the VE's testimony regarding Johnson's contractor work in reaching a light work RFC assessment, and substantial evidence in the record supports that assessment. The ALJ's misstatement of the VE's testimony was therefore harmless because it did not affect the outcome of the ALJ's RFC assessment or the legitimacy of that assessment. *See Dewey v. Astrue*, 509 F.3d 447, 449-50 (8th Cir. 2007) (error is harmless when it would not affect the ALJ's decision).[9] That is, the conclusion that Johnson is capable of performing past relevant work (as a contractor), consistent with a light work RFC, remains the same.

## C. Johnson's Credibility

Johnson next objects to the ALJ's credibility assessment.[10] The ALJ discounted Johnson's subjective complaints of pain and the resulting limitations only to the extent inconsistent with a light work assessment, and the Magistrate Judge found that substantial evidence in the record supported that assessment. (Admin. R. at 17-18; R&R at 50.) In essence, Johnson's argument is that discounting his testimony was simply wrong:

---

[9] *Dewey* does not, as Johnson argues, support his position. In *Dewey*, the Eighth Circuit remanded a Social Security Disability case for rehearing where the ALJ explicitly credited an RFC assessment that the ALJ believed to be authored by a physician, but which was, in fact, not. *Dewey v. Astrue*, 509 F.3d 447, 448-450 (8th Cir. 2007). The ALJ's misstatement of testimony in this case bears no resemblance to the error in *Dewey*.

[10] Johnson appears to hang his objection to the credibility assessment on the ALJ's failure to consider the impairments discussed in II.A., *supra*. "Since the ALJ at the time that he wrote and/or signed the decision did not mention or show any awareness of the Plaintiff's most severe medical conditions, he certainly could not have discounted, based upon substantial evidence, the Plaintiff's testimony as to his work-related physical limitations." (Johnson's Objections at 10.) To the extent Johnson relies on the ALJ's failure to reference the conditions discussed in Part II.A in arguing that the ALJ improperly assessed his credibility, the objection is overruled for the reasons discussed above.

"[Johnson's] testimony regarding his work-related physical limitations is fully consistent with his medical record, which includes diagnoses of . . . severe impairments." (Johnson's Objections at 10-11.)

In assessing a claimant's credibility, the ALJ must consider the claimant's prior work history and observations of third parties and treating physicians regarding, for example: the claimant's daily activities, dosage and effectiveness of medication, duration and intensity of pain, functional restrictions, precipitating and aggravating factors, and the presence or absence of objective medical evidence supporting the claimant's complaints. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999). The ALJ may not discount the claimant's subjective complaints solely on the basis of personal observations, but rather only in light of "inconsistencies in the evidence as a whole." *Polaski*, 739 F.2d at 1322. Yet the ALJ's decision need not expressly mention how every *Polaski* factor relates to a claimant's credibility, *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007), and review of such a determination is deferential because the ALJ is best situated to determine the claimant's credibility, *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).

The ALJ considered Johnson's daily activities (shopping, grooming, performing prescribed exercises, caring for pets, etc.), continued employment, activities and hobbies, failure to appear for medical appointments, and prior work history in determining that Johnson's complaints regarding the "intensity, persistence and limiting effects" of his symptoms were not credible to the extent incompatible with a light work RFC. (Admin. R. at 18.) The Court finds that the ALJ properly applied the *Polaski* factors in assessing

Johnson's credibility and that substantial evidence on the record as a whole supports that determination. Johnson's unvarnished argument that the ALJ erroneously discounted his testimony because he misunderstood the medical record is not persuasive because, as described above, the ALJ did not need separately to enumerate Johnson's congestive heart failure and other conditions. Accordingly, Johnson's objection regarding the ALJ's credibility assessment is overruled.

### D.     ALJ's Development of the Record

Finally, Johnson argues that the ALJ did not – as the Magistrate Judge concluded – adequately develop the record as to the opinions of the state agency physicians.[11] Specifically, Johnson argues that, by the time of the ALJ's decision, these opinions were out of date and inconsistent with the evidence as a whole. Dr. Gregory Salmi's January 2008 RFC assessment, for example, was two years old by the time of the hearing. The ALJ must "develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). However, an ALJ need not obtain additional or clarifying statements unless a critical issue is undeveloped. *See Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005). "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Warburton v. Apfel*, 188 F.3d

---

[11] The ALJ is required to consider the state agency medical consultants' opinions as to the claimant's RFC, and the ALJ must explain the weight given to those opinions. *See* 20 C.F.R. §§ 404.1527(f); 416.927(f); SSR 96-6P, 1996 WL 374180, at *4.

1047, 1051 (8th Cir. 1999) (citation and internal quotation marks omitted). To demonstrate that the ALJ failed in adequately developing the record, the claimant must show that the error resulted in some prejudice. *Haley v. Massanari*, 258 F.3d 742, 750 (8th Cir. 2001).

The ALJ's decision – as the regulations require[12] – specified the weight the ALJ accorded to the state agency physicians' assessments. Although the ALJ accorded the state agency physicians' medium RFC assessment "significant weight," the ALJ ultimately limited Johnson's RFC to light work in view of later medical records and other factors. (*See* Admin. R. at 16-18.) Johnson focuses on the "significant weight" the ALJ placed on the state agency physicians' opinions, which he characterizes as out of date and inconsistent with the record. The ultimate issue, however, is not whether the ALJ erred in according the ALJ's opinions "significant weight" but whether substantial evidence on the record as a whole supports the ALJ's light RFC determination.[13] *See Haley*, 258 F.3d

---

[12] 20 C.F.R. § 416.927(e)(2)(ii) ("Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.").

[13] The January and June 2008 state agency physicians' opinions, of course, did not reflect medical evidence that accumulated after that time. Reliance on outdated opinions may in certain cases be improper. *See Clark v. Astrue*, No. 10-4908, 2012 WL 1658894, *11 (D. Minn. Mar. 30, 2012.) However, when a state agency physician renders an RFC assessment prior to the hearing, the ALJ may rely on that RFC if it is supported by the record as a whole, including evidence that accrued after the assessment. *See* 20 C.F.R. § 404.1527(d)(4); *Tyree v. Astrue*, 3:09-1091, 2010 WL 2650315, at *4 (M.D. Tenn. June 28, 2010).

at 749 (assessing alleged error to develop the record in terms of whether the record contained substantial evidence to permit an informed decision); *see also* 20 C.F.R. § 416.927(b)-(e) (discussing evaluation of opinion evidence).

Preliminarily, the mere fact that the state physicians' RFC assessments were written two years before the hearing date does not necessarily render them unworthy of credence. *See, e.g.*, *Hall v. Astrue*, 09-2514, 2010 WL 5621291, at *8 (N.D. Ohio Dec. 23, 2010) (finding ALJ's reliance on two-year-old medical opinions to be appropriate because the opinions were within the alleged disability period and the lapse of time did not render the opinions stale). More fundamentally, however, the state agency physicians' opinions that Johnson was not disabled are consistent with post-June 2008 records showing that Johnson continued to carry on with daily activities, exercise, self-care, and work. (*See* Admin. R. at 501-03 (reporting noise exposure at work in July 2008), 542 (reporting improvement in ability to tolerate exercise), 546-47 (wound care), 551 (recounting on July 14, 2009 Johnson's report that he "has been working and is on his feet throughout the day and he is outside"), 567 (reporting current work as a general contractor on September 24, 2009).)[14]

---

[14] Some medical records after June 2008 do suggest that Johnson was experiencing increasing difficulty with physical activity. (*See id.* at 549 (exercise session cut short on June 26, 2009 following Johnson's report of fatigue and dizziness), 550 (again reporting fatigue several days later), 560 (referencing Johnson's "inability to perform physical activity" as being "likely multifactorial"), 567 (referencing Johnson's perception that his "symptoms are progressively getting worse").) But although the record does contain some evidence showing that Johnson was experiencing difficulty with physical activity, the Court finds that the ALJ's conclusion is nonetheless supported by substantial evidence on the record as a whole that shows Johnson continued to work and carry on with daily activities during the alleged disability period. *See*

(Footnote continued on next page.)

Moreover, the record contained, and the ALJ considered, not just the state agency opinions but also documentation from Johnson's treating physicians. Indeed, the ALJ specifically found the light RFC to be consistent with the December 2009 opinion from Dr. Kaiser. (Admin. R. at 17; *see also id.* at 576 (opining that while Johnson would be "unable to perform the physically demanding duties of a full time carpenter[,]" it is "hard to be real specific on actual limitations").) Although Johnson objects that a light work RFC is inconsistent with Kaiser's opinion, the Court sees no inconsistency. The light work limitation the ALJ assigned – with various additional restrictions including that Johnson can "only occasionally reach overhead with his right arm" and "only occasionally climb ladders, ropes and scaffolds" – recognizes that Johnson cannot perform the "physically demanding duties of a full time carpenter." Crucially, the ALJ did not blindly rely on the state agency physicians' medium work RFC assessment; rather, the ALJ limited Johnson's RFC to light work in view of later medical records (*e.g.*, Dr. Kaiser's assessment) and Johnson's work history and testimony. (*Id.* at 17-18.) In sum, the Court finds that the ALJ was not obliged to obtain an updated RFC assessment because the record contained ample evidence to permit an informed decision and that substantial evidence in the record as a whole supports the ALJ's light weight RFC determination. *See Warburton*, 188 F.3d at 1051. Johnson's objections with respect to the development of the record will therefore be overruled.

_____

(Footnote continued.)

*Pearsall*, 274 F.3d at 1217 (observing that if possible to draw two inconsistent positions from the evidence with respect to disability, the Court must affirm the commissioner's decision if supported by substantial evidence).

**ORDER**

Based on the foregoing, and the records, files, and proceedings herein, the Court **OVERRULES** plaintiff Dale William Johnson's objections [Docket No. 23] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated July 11, 2012 [Docket No. 21]. **IT IS HEREBY ORDERED** that:

1.      Plaintiff Dale William Johnson's Motion for Summary Judgment [Docket No. 11] is **DENIED**.

2.      Defendant Commissioner's Motion for Summary Judgment [Docket No. 17] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

DATED:   September 20, 2012          _____ s/ John R. Tunheim _____
at Minneapolis, Minnesota.                        JOHN R. TUNHEIM
                                                  United States District Judge